UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CHICAGO MOTORS, LLC
d/b/a SPEED AUTO SALES                                                          PLAINTIFF

v.                                                                    NO. 3:13-CV-00356-CRS

APEX INSURANCE AGENCY
INTERNATIONAL, INC. and
STATE NATIONAL INSURANCE COMPANY, INC.                              DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on the motion of the defendant, Apex Insurance Agency International, Inc. ("Apex Insurance"), to dismiss claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (DN 6). The plaintiff, Chicago Motors, LLC d/b/a Speed Auto Sales, has filed a response to Apex Insurance's motion (DN 9), to which Apex Insurance has replied (DN 11).[1] The matter is now ripe for adjudication. For the reasons set forth below, the court will grant Apex Insurance's motion to dismiss (DN 6).

### I.

Chicago Motors LLC d/b/a Speed Auto Sales (hereinafter, "Chicago–Speed")[2] owns a used car lot located in Louisville, Kentucky. Apex Insurance appears to have prepared a "Commercial Insurance Proposal" on December 14, 2011 for Chicago–Speed. The following

---
[1] Chicago Motors also filed a motion for a hearing on the motion to dismiss. (DN 13). However, "dispositive motions are routinely decided on papers filed by the parties, without oral arguments." *Scott v. Metro. Health Corp.*, 234 F. App'x. 341 (6th Cir. 2007) (unpublished). As both parties have adequately briefed the issues before the court, the court does not need oral argument to decide the motion. As such, we will deny the motion for a hearing (DN 13).
[2] The First Amended Complaint indicates that Speed Auto Sales is the fictitious business name of Chicago Motors. The parties do not dispute that Chicago Motors has standing to bring claims on behalf of Speed Auto Sales. Accordingly, the court will refer to the plaintiff as Chicago–Speed for the purposes of this Memorandum Opinion.

month, State National Insurance Company, Inc. ("State National")[3] issued a Commercial Lines Policy to Chicago–Speed. State National is listed on the Policy's declaration page as the insurer, and Apex Insurance's name does not appear anywhere on the Policy.

Chicago–Speed submitted a claim for insurance benefits under the Policy after its used car inventory was damaged by a hail storm in April 2012. After it was informed that it would not receive the coverage that it allegedly expected under the Policy, Chicago–Speed brought this action in Jefferson County, Kentucky, Circuit Court. Although the complaint initially named Apex Insurance as the sole defendant, Chicago–Speed subsequently amended the complaint to name State National as an additional defendant.

In the amended complaint, Chicago–Speed brings claims against both Apex Insurance and State National for breach of contract, negligence, bad faith, and violation of the Kentucky Unfair Claims Settlement Practices Act. Chicago–Speed seeks damages and a declaration that it is entitled to its reasonable expectation of coverage because, according to Chicago–Speed, the Policy allegedly contains a "coinsurance" calculation that unreasonably reduces the coverage limits. Apex Insurance removed the action to this court on the basis of our diversity jurisdiction and refiled the motion to dismiss that it had previously submitted to the Jefferson Circuit Court.

**II.**

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). During the pleading stage, the plaintiff must provide factual allegations that are "enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, a

---

[3] A summons was issued as to State National on January 2, 2014, but State National has not yet entered an appearance in this action.

court must "construe the complaint in the light most favorable to plaintiff" and "accept all well-pled factual allegations as true[.]" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (internal marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citation omitted). "[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements" of the offense. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted).

Generally, a court may not consider matters outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). However, "when a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (quotation omitted).

**III.**

The amended complaint seeks to bring claims against both Apex Insurance and State National for breach of contract, negligence, bad faith, and violation of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12–230 ("UCSPA"), in addition to a declaration that Chicago–Speed is entitled to its reasonable expectation of coverage under the Policy in accordance with the principles developed in *Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585 (Ky. 2012). We will address each of these claims as to Apex Insurance to determine if they can survive Apex Insurance's motion to dismiss. However, we make no determination as to the viability of the claims asserted against State National in this action.

**A. Breach of Contract**

In the amended complaint, Chicago–Speed alleges that it was damaged as a "direct and proximate cause of Defendant Apex's breach of policy[.]" (Am. Compl., DN 1-13, p. 6). Apex Insurance argues that this breach of contract claim must be dismissed because Apex Insurance is not a party to the insurance policy issued to Chicago–Speed. Apex Insurance submitted a copy of the Policy with its motion to dismiss. Although the Policy was not attached as an exhibit to the amended complaint, the court may consider that document in ruling on the motion because it is referenced in the amended complaint and is central to Chicago–Speed's claims. *Greenberg*, 177 F.3d at 514.

Under Kentucky law, parties may only sue for a breach of contract if privity of contract existed. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (internal marks and citations omitted) (citing Black's Law Dictionary for the proposition that "[p]rivity of contract is '[t]he relationship between parties to a contract, allowing them to sue each other but preventing a third party from doing so'"). If a plaintiff is not a party to the

contract, he or she has no right to recover damages for the contract's breach. *Owensboro Mercy Health Sys., Inc. v. Willis N. Am., Inc.*, 2009 WL 1405172, *3 (W.D. Ky. May 18, 2009) (citing 17A Am. Jur. 2d Contracts § 425 (1991)).

In this action, the Policy's declaration page names "State National Insurance Company, Inc."; Apex Insurance's name does not appear anywhere in or on the Policy. Thus, the only parties to the contract at issue in this action are State National and Chicago–Speed. Accordingly, Chicago–Speed has no right to recover damages from Apex Insurance for its breach of the insurance contract because Apex Insurance is not a party to the contract. *See Daugherty v. Am. Express Co.*, 485 F. App'x 746, 748 (6th Cir. 2012) (unpublished) (declining to hold an insurance plan solicitor liable for breach of an insurance contract because the policy did not list the plan solicitor as the "insurer").

Chicago–Speed also argues that the Commercial Insurance Proposal dated December 14, 2011, which Apex Insurance appears to have prepared and submitted to Chicago–Speed prior to the issuance of the Policy, constitutes a contract. According to Chicago–Speed, Apex Insurance violated the terms of the Commercial Insurance Proposal when it allegedly failed to secure the insurance coverage that it promised to procure. Although the amended complaint alleges that Apex Insurance was in breach of the "policy," the amended complaint does not specifically allege that Apex Insurance was in breach of the Commercial Insurance Proposal. Nevertheless, the court will address Chicago–Speed's argument as to Apex Insurance's alleged breach of the Commercial Insurance Proposal. The Commercial Insurance Proposal was not attached to the amended complaint, but the court may consider it in ruling on the motion to dismiss because it is referenced in the amended complaint and is central to Chicago–Speed's claims. *Greenberg*, 177 F.3d at 514.

Even if we assume that the Commercial Insurance Proposal constituted a valid contract, Apex Insurance cannot be said to be in breach of that contract because the terms in the Commercial Insurance Proposal are similar—if not identical—to the terms contained in the Policy issued to Chicago–Speed. The Commercial Insurance Proposal, which Chicago–Speed's representative signed on January 6, 2012, is a one-page document that lists the proposed commercial garage/automobile limits, the proposed dealers physical damage coverage, the proposed garage keepers coverage, and the total estimated annual premium. With the exception of the total estimated annual premium amount, the terms contained in the Commercial Insurance Proposal are the same as those contained in the Policy.

Nevertheless, Chicago–Speed claims that the Commercial Insurance Proposal stated that there would be "open lot" coverage[4] of $100,000 (Each Accident) and $300,000 (Other Than Auto Annual Aggregate). In the Commercial Insurance Proposal, this provision is entitled "Commercial Garage / Automobile Limits with State Ins Co (Admitted)" for claims involving "Bodily Injury & Property Damage." Chicago–Speed claims that the Policy failed to adopt these coverage limits and instead provided for only $50,000 in coverage. However, the Policy's declaration pages state that the liability coverage limit for each "accident" in "Garage Operations" is $100,000 Auto Only, and the aggregate limit for "accidents" in "Garage Operations" is $300,000. These terms appear to comport with the terms contained in the Commercial Insurance Proposal's "Commercial Garage / Automobile Limits" section.[5]

---

[4] Chicago–Speed has not provided the court with a definition of "open lot" coverage, and the court is unable to divine the meaning of that term as used by Chicago–Speed.

[5] In its responsive brief (DN 9), Chicago–Speed alleges for the first time in this action that the Commercial Insurance Proposal provided for a coverage limit of $250,000 for what Chicago–Speed refers to as "garage keepers property damage." Chicago–Speed contends that the Policy erroneously listed the "physical property coverage nonreporting basis" as $50,000, in direct contravention to the terms of the Commercial Insurance Proposal. A motion to dismiss tests the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). As these arguments were not raised in the complaint, the court will not address them here.

Therefore, the amended complaint fails to state a claim against Apex Insurance for breach of the Policy or breach of the Commercial Insurance Proposal.

### B. Negligence

Chicago–Speed alleges that Apex Insurance was negligent in failing to provide coverage on its hail damage claim. Apex Insurance contends that this negligence claim must be dismissed because Apex did not owe a duty to Chicago–Speed.

To maintain a negligence action under Kentucky law, a plaintiff must show the following elements: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992) (citing *Ill. Cent. R.R. v. Vincent*, 412 S.W.2d 874, 876 (Ky. 1967)). "The Supreme Court of Kentucky has held that, in general, insurance brokers and agents owe only a standard duty of reasonable care to their clients." *Helton v. Am. Gen. Life Ins. Co.*, 946 F. Supp. 2d 695, 708 (W.D. Ky. 2013) (citing *Associated Ins. Serv., Inc. v. Garcia*, 307 S.W.3d 58, 63 (Ky. 2010)). Kentucky courts have recognized that "an insurer may assume a duty to advise an insured when: (1) he expressly undertakes to advise the insured; or (2) he impliedly undertakes to advise the insured." *Mullins*, 839 S.W.2d at 248 (citation omitted).

The parties do not allege that Apex Insurance expressly assumed a duty to advise Chicago–Speed. Therefore, we will only consider whether Apex Insurance impliedly assumed a duty to advise Chicago–Speed. "An implied assumption of duty may be present when: (1) the insured pays the insurance agent consideration beyond a mere payment of the premium . . . ; (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on . . . ; or (3) the insured clearly makes a request for advice." *Id.* (internal marks and citations omitted).

In the case at bar, there is no allegation that Chicago–Speed gave Apex Insurance additional consideration, nor is it alleged that the parties had an extended course of dealing. Further, the parties have not alleged that Chicago–Speed made a clear request to Apex Insurance for advice. Thus, there are no factual allegations that could establish an implied duty on the part of Apex Insurance. In the absence of a duty, the court is unable to find that Chicago–Speed's claim against Apex Insurance for negligence can stand.

Moreover, the court notes that the Commercial Insurance Proposal contains a disclaimer that the Proposal is not a policy contract because it is no more than a general description of the coverage that is available. The disclaimer further states that "[o]nly an issued policy contract should be read for actual coverages and exclusions."

### C. Bad Faith and Violation of the UCSPA

Chicago–Speed also brings claims against Apex Insurance for common law bad faith and violation of the UCSPA. The requirements for establishing bad faith are the same under both the common law and the UCSPA. *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) (quoting KRS § 304.1–040). The Kentucky Supreme Court has held that "the UCSPA was clearly intended to regulate the conduct of insurance companies." *Id.* at 96. Thus, "the UCSPA and the tort of 'bad faith' apply only to those persons or entities (and their agents) who are 'engaged . . . in the business of entering into contracts of insurance.'" *Id.* at 102.

The parties dispute whether Apex Insurance is "engaged . . . in the business of entering into contracts of insurance" and therefore subject to suit under the UCSPA. In the amended complaint, Apex Insurance is alleged to have sold the Policy to Chicago–Speed, and in doing so failed to procure the coverage limits that Chicago–Speed allegedly expected to receive. Although Apex Insurance is named on the Commercial Insurance Proposal, it is not listed anywhere on the

Policy. Rather, State National is listed as the issuer of the Policy. Even if, as Chicago–Speed claims, Apex Insurance does issue other insurance policies in the scope of its services, in this case it appears to have been possibly acting as an agent or broker. The facts as presented to the court thus far do not suggest that Apex Insurance was anything other than an insurance agent or broker in this action.[6]

The question then becomes whether the UCSPA contemplates a suit against an insurance agent or broker. Apex Insurance cites to *Western Leasing, Inc. v. Acordia of Ky., Inc.*, 2010 Ky. App. LEXIS 81, 2010 WL 1814959 (Ky. Ct. App. May 7, 2010) for the proposition that an insurance agent or broker is not liable to an insured under the UCSPA. In that case, an insurance broker issued a certificate of insurance that contained affirmative misrepresentations and errors. *Id.* at *1–2. The predecessor-in-interest to the company to whom the misrepresentations were made brought claims against the broker for bad faith and violation of the UCSPA. *Id.* at *6. The Kentucky Court of Appeals determined that the broker was an agent of the insured and could not be considered an insurance company or an agent of an insurance company under the UCSPA. *Id.* at *26–27. The court held that the broker was "outside the scope of persons who are intended to be regulated under the UCSPA." *Id.* (noting that *dicta* in *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) suggests that because insureds are not subject to the UCSPA, insurance brokers should not be subject to the UCSPA because they are agents of the insured).

Chicago–Speed is apparently in agreement with Apex Insurance that the *Western Leasing* court held that an insurance agent or broker is not liable to an insured under the UCSPA. Because Chicago–Speed does not seem to dispute that Apex Insurance was an insurance agent or

---

[6] In fact, Chicago–Speed refers to Apex Insurance as an insurance agent or broker in its pleadings. The amended complaint identifies Apex Insurance is an "insurance agent and/or provider," and as "agent Apex." (Am. Compl., DN 1-13, ¶¶ 2, 7). In its responsive brief, Chicago–Speed states that "Defendant Apex is believed to have served as insurance agent/broker in the transaction which is the subject of this litigation." (DN 9, p. 2).

broker, the court finds that Apex Insurance is not subject to the UCSPA. This conclusion is also supported by case law which suggests that privity of contract is necessary for liability to attach under the UCSPA because bad faith actions derive from the fiduciary duty that an insurance company owes to its insured under the insurance contract. *See Daugherty v. Am. Express Co.*, 2010 WL 4683758, *3 (W.D. Ky. Nov. 12, 2010); *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 380 (Ky. 2000). The claims against Apex Insurance for bad faith and violation of the UCSPA derive from the Policy issued by State National. Because Apex Insurance was not a party to the policy, Apex Insurance was not in privity of contract with Chicago–Speed and owed no fiduciary duty to Chicago–Speed under that policy. *See Daugherty*, 2010 WL 4683758, at *3–4 (dismissing claims against solicitors of insurance policies because they had no contractual obligation under the policy); *Ray Jones Trucking, Inc. v. Ky. Auto. Ins. Plan*, 2007 WL 1309616, *3 (E.D. Ky. May 4, 2007) (holding that plaintiffs could not assert a bad faith claim against an entity statutorily organized to provide insurance coverage because the entity did not execute the insurance contract from which the bad faith claims arose). Accordingly, Chicago–Speed's claims against Apex Insurance for bad faith and violation of the UCSPA fail as a matter of law.

### D. Declaratory Judgment

In addition to the other requested relief, Chicago–Speed requests a declaration that it is entitled to its reasonable expectation of coverage in the amount of $100,000 or $300,000, pursuant to the doctrine of reasonable expectations and *Bidwell v. Shelter Mut. Ins. Co*., 367 S.W.3d 585 (Ky. 2012). Chicago–Speed argues that the Policy contained a "coinsurance" calculation that reduced the coverage limits on its claim. Because this calculation was allegedly "buried" in the Policy, Chicago–Speed contends that it "is insufficiently plain and clear to defeat [Chicago–Speed's] reasonable expectation" of coverage. *Id.* at 592.

We have already determined that Apex Insurance was not a party to the Policy. As such, Apex Insurance cannot be held liable for any alleged misrepresentations or hidden terms contained therein. Therefore, Chicago–Speed's request for declaratory relief must fail as to Apex Insurance.

### E.  Additional Claims

Finally, Chicago–Speed appears to assert for the first time in its responsive brief that Apex Insurance violated Kentucky statutes that require insurance agents and brokers to be licensed by the Commonwealth of Kentucky and that this violation is negligence *per se*. Chicago–Speed also contends that Apex Insurance failed to respond to discovery requests when the action was pending before the Jefferson Circuit Court. Chicago–Speed did not include these claims in its amended complaint, and it cannot effect further amendments to the complaint by including these claims for the first time in its responsive brief. Therefore, the court will not grant relief to Chicago–Speed on these claims.

### IV.

For the reasons set forth herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that Apex Insurance's motion to dismiss (DN 6) is **GRANTED**, and Counts V, VI, VII, VIII, and IX of Chicago–Speed's amended complaint are hereby **DISMISSED** as to Apex Insurance. Chicago–Speed's motion for a hearing on the motion to dismiss (DN 13) is **DENIED**. A separate order will be entered this date in accordance with this Memorandum Opinion.

February 26, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**