UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CHICAGO MOTORS, LLC,                                               Plaintiff,

v.                                                              Civil Action No. 3:13-cv-00356-DJH

APEX INSURANCE AGENCY
INTERNATIONAL, INC., et al.,                                       Defendants.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Chicago Motors, LLC, d/b/a Speed Auto Sales, claims that it suffered loss after State National Insurance Company, Inc. breached a commercial insurance contract between the two parties. In addition to breach of contract, Chicago Motors asserts claims for negligence, bad faith, and a violation of the Kentucky Unfair Claims Settlement Practices Act. (Docket No. 1-13, PageID # 170-71) Before the Court are Chicago Motors' motion for summary judgment and State National's cross motion for summary judgment (D.N. 29, 31, 35, 36, 37). For the reasons set forth below, State National's motion will be granted and Chicago Motors' motion will be denied.

**I.  BACKGROUND**

Chicago Motors owns and operates a used-car dealership in Louisville, Kentucky. State National is an insurance company from which Chicago Motors purchased a commercial insurance policy in February 2012. In April 2012, a hailstorm damaged some of the used cars in Chicago Motors' inventory. Chicago Motors notified State National of the incident and submitted a claim for insurance benefits. State National's claims adjuster hired Engle Martin & Associates to assess the damage and prepare an estimate. Engle Martin found $150,075.94 in total damages and $133,276.15 in net loss. (D.N. 31, PageID # 668-69) At the time of loss,

1

Engle Martin estimated the total value of Chicago Motors' inventory to be $307,700. The figures provided in these estimates are not in dispute. (*Id.*, PageID # 669)

Based on the terms of the insurance policy, Chicago Motors contends that it is entitled to a maximum of $250,000 in coverage for the damage done to its inventory. (D.N. 29, PageID # 572) State National claims that the policy caps coverage for such damage at $50,000, less a per-occurrence deductible of $2,500. State National further asserts that the available coverage is limited by a coinsurance provision; because the value of Chicago Motors' inventory exceeded the limits of coverage, the policy's terms require that State National only pay a percentage of what it would otherwise be obligated to pay.[1] (D.N. 31, PageID # 667-68) Based on State National's interpretation of the policy, it offered Chicago Motors $19,156.83 in coverage. State National tendered payment in this amount, but Chicago Motors rejected the payment. (*Id.*, PageID # 669)

Chicago Motors originally brought suit against Apex Insurance Agency International, Inc., the independent agent that brokered the policy. Chicago Motors later amended its pleadings to include State National. In February 2014, this Court dismissed Chicago Motors' claims against Apex. (D.N. 17, PageID # 422) The claims against State National remain; however, the breach-of-contract claim was bifurcated from the non-contract claims in October 2014. (*See* D.N. 25, PageID # 457) Chicago Motors seeks damages and a declaration that it is entitled to its reasonable expectation of coverage. Because the Court finds that State National did not breach the insurance contract, the Court will grant summary judgment in State National's favor.

---

[1] The insurance policy allowed Chicago Motors to choose between a "reporting" and a "non-reporting" premium basis for its physical damage coverage. Typically, dealerships that choose a reporting basis file quarterly or monthly reports to the insurer that detail the value of the covered vehicles. The insurer then calculates the monthly or quarterly premium on a pro rata basis based on those reports. The coinsurance limitation applies only when a dealership chooses the non-reporting premium basis, as was done here. (D.N. 31, PageID # 673)

## II. STANDARD

In order to grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must review the evidence in a light most favorable to the non-moving party, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The non-moving party must establish a genuine issue of material fact with respect to each element of each of its claims. *Celotex*, 477 U.S. at 322-23. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient. Instead, there must be evidence upon which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

To determine whether State National breached the insurance contract, the Court will first determine the amount of coverage available based upon the insurance contract. The Court will then analyze the validity of the coinsurance provision contained within the policy.

**A.     Coverage Analysis**

The interpretation of an insurance contract is a matter of law to be decided by the Court. *Hugenberg v. W. Am. Ins. Co./Ohio Cas. Grp.*, 249 S.W.3d 174, 185 (Ky. 2006). Absent ambiguity, terms in an insurance contract are to be construed according to their "plain and ordinary meaning." *Id.* Insurance policies should be interpreted according to the parties' mutual understanding at the time they entered into the contract, with this mutual understanding to be deduced from the language of the contract itself. *Id.* at 185-86. While exceptions and exclusions in insurance policies are to be narrowly construed to effectuate insurance coverage, "[r]easonable conditions, restrictions, and limitations on insurance coverage are not deemed *per se* to be contrary to public policy." *Id.* at 186; *see also St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994).

In support of its argument that it is entitled to up to $250,000 in coverage, Chicago Motors points to various portions of a section in the contract titled "Garage Declarations." However, as the Court will elucidate below, Chicago Motors misinterprets this portion of the policy. In particular, Chicago Motors misunderstands that the $250,000 available in "Garagekeepers Comprehensive Coverage" applies only to *customer*-owned autos left with the dealer for service, repair, or storage. The vehicles damaged in the hailstorm belonged to Chicago Motors, rather than its customers, and the policy caps coverage for *dealer*-owned vehicles under "Physical Damage Comprehensive Coverage" at $50,000.

Item Two of the Garage Declarations outlines the "Schedule of Coverages and Covered Autos," as shown below:

**ITEM TWO**
Schedule Of Coverages And Covered Autos (Cont'd)

| Coverages | Covered Autos | Limit | Premium |
|---|---|---|---|
| Medical Expense And Income Loss Benefits (Virginia Only) | | Seperately Stated in Each Medical Expense And Income Loss Benefits Endorsement. | |
| Uninsured Motorists | | $ | $ |
| Underinsured Motorists (When Not Included In Uninsured Motorists Coverage) | | $ | $ |
| Garagekeepers Comprehensive Coverage | 30 | Separately Stated For Each Location In Item Six | $ 621 |
| Garagekeepers Specified Causes Of Loss Coverage Coverage | | | $ |
| Garagekeepers Collision Coverage | 30 | | $ 369 |
| Physical Damage Comprehensive Coverage | 31 | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $ 500/2,500 Deductible For each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning. See Item Seven For Dealers Autos. | $ 303 |

(D.N. 31-1, PageID # 688) To determine the amount and applicability of "Garagekeepers Comprehensive Coverage," the chart directs the reader to look to Item Six:

5

ITEM SIX

Garagekeepers Coverages And Premiums

| Location Number | Address Where You Conduct Garage Operations (Main Location) | | |
|---|---|---|---|
| 1 | 6913 Shepherdsville Road, Louisville KY 40219 | | |
| Coverages | Limit Of Insurance And Deductible | | Premium |
| Comprehensive Or Specified Causes Of Loss | $ <br> $ <br> $ <br> $ 250,000 <br> $ 500 <br> $ 2,500 | Minus <br> Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism Subject To <br> Maximum Deductible For All Such Loss In Any One Event; <br> Or <br> Minus <br> Deductible For All Perils Subject To <br> Maximum Deductible For All Such Loss In Any One Event; | $ 621 |
| Collision | $ 250,000 <br> $ 500 | Minus <br> Deductible For Each Customer's Auto. | $ 369 |

(D.N. 31-1, PageID # 692) While Chicago Motors relies on the above chart to argue that it is entitled to $250,000 of coverage, it has failed to consider the meaning of the numbers 30 and 31 contained in Item Two.

In Item Two, in the column listing the type of covered autos for each component of coverage, the number 30 appears next to "Garagekeepers Comprehensive Coverage," whereas the number 31 appears next to "Physical Damage Comprehensive Coverage." The meaning of these numbers is explained later in the policy, as follows:

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 30 | "Autos" Left With You For Service, Repair, Storage Or Safekeeping | Any customer's land motor vehicle or trailer or semitrailer while left with you for service, repair, storage or safekeeping. Customers include your "employees", and members of their households, who pay for the services performed. |
| 31 | Dealers "Autos" (Physical Damage Coverages) | Any "autos" and the interests in these "autos" described in Item Seven of the Declarations. |

6

(D.N. 31-1, PageID # 698) As the table indicates, the Garagekeepers Comprehensive Coverage of $250,000 applies to those customer vehicles "left with [Chicago Motors] for service," rather than those vehicles owned by Chicago Motors. Because the vehicles damaged in the hailstorm were vehicles owned by Chicago Motors, and not those left by customers to be serviced, the $250,000 coverage described in Item Six is not applicable.

To determine the amount of Physical Damage Coverage available for vehicles owned by the dealer—those vehicles represented by number 31—the policy directs the reader to look to Item Seven:

ITEM SEVEN
Physical Damage Coverage - Types Of Covered Autos And Interests In These Autos - Premiums - Reporting Or Nonreporting Basis (Cont'd)

| Location Number: | 1 | |
|---|---|---|
| Coverage | Limits Of Insurance And Deductible | Premium |
| Comprehensive Or Specified Causes Of Loss | $ <br> $ <br> $ <br> $ 50,000 <br> $ 500 <br> $ 2500 | Minus Deductible For Each Covered Auto For Loss Caused By Theft Or Mischief Or Vandalism Subject To Maximum Deductible For All Such Loss In Any One Even; <br> Or <br> Minus Deductible For All Perils Subject To Maximum Deductible For All Such Loss In Any One Event. | $ 303 |

(D.N. 31-1, PageID # 693) From this chart, it is apparent that Chicago Motors is entitled to only $50,000 of coverage for physical damage done to those vehicles comprising its inventory.

Thus, the Court concludes that Chicago Motors is not entitled to a maximum of $250,000 of coverage. Chicago Motors mistakenly relies on a provision of the insurance policy that pertains to coverage for customer-owned vehicles being serviced on Chicago Motors' premises. Because the hail damage was done to Chicago Motors' own inventory, the contract terms provide for only $50,000 in coverage.

7

### B.    Coinsurance Provision

Next, the Court will determine whether the physical damage coverage is further subject to the coinsurance provision. The coinsurance provision is included under the section of the contract concerning physical damage coverage, where the policy contains the following "Limits of Insurance Clause":

> If, when "loss" occurs, the total value of your covered "autos" exceeds the Limit of Insurance shown in the Declarations, we will pay only a percentage of what we would otherwise be obligated to pay.  We will determine this percentage by dividing the limit by the total values you actually had when "loss" occurred.

(D.N. 31-1, PageID # 708)  If applicable, the coinsurance provision would limit the amount State National is obligated to pay because Chicago Motors underreported the amount of inventory it would be insuring.  Because State National determined Chicago Motors' limit to be $50,000, and its inventory was valued at $307,700, State National resolved that the insurance contract required it to pay 16.25% of the actual loss ($50,000/$307,700 = .1625).  Since the net loss was $133,276.15 and the policy included a deductible of $2,500, State National determined the loss payable to be $19,156.83 (.1625 x $133,276.15 = $21,656.83 - $2,500 = $19,156.83). (D.N. 31, PageID # 673)

For a limitation of insurance coverage to be enforceable, Kentucky law requires that the provision be "clearly stated in order to apprise the insured of such limitations." *St. Paul Fire*, 870 S.W.2d at 227.  To determine the validity of a particular limitation, the Court must analyze whether it is in compliance with the "reasonable expectations doctrine." *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986).  Chicago Motors claims that the insurance policy gave it the reasonable expectation that it would receive the policy limit contained in the declarations pages, without the amount being severely reduced because of a limitation of coverage stated in limited and confusing terms later in the agreement.

"The gist of the [reasonable expectations] doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Id.* "[N]ot only is the exclusion to be carefully expressed, but . . . the operative terms clearly defined." *Bidwell v. Shelter Mut. Ins. Co.*, 367 S.W.3d 585, 588 (Ky. 2012). The reasonable expectations doctrine "applies only to policies with ambiguous terms— e.g., when a policy is susceptible to two (2) or more reasonable interpretations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003). A court must interpret ambiguous terms in an insurance contract in favor of the insured's reasonable expectations and construe terms as an average person would construe them, rather than consider the policyholder's subjective thought process regarding the policy. *Hugenberg*, 249 S.W.3d at 185; *see also Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. Ct. App. 2012). "Only actual ambiguities, not fanciful ones, will trigger application of the doctrine." *True*, 99 S.W.3d at 443.

To determine whether a particular policy complies with the reasonable expectations doctrine, Kentucky courts have used the following factors as guideposts: (1) whether the declarations page is silent with respect to any limitation included later in the policy; (2) whether the limitation is mentioned in limited or confusing terminology; and (3) whether the policy places most of the emphasis on the figures provided for in the declarations page. *Bidwell*, 367 S.W.3d at 589-90.[2] As an initial matter, the Court notes that the coinsurance provision contains

---

[2] In *Bidwell*, the appellant was a passenger who was injured in a single-vehicle accident in which the driver was using the vehicle with permission from the owners. 367 S.W.3d at 586-87. The appellant filed suit against the owners' automobile insurer, arguing that a "step-down provision" in the policy, which drastically reduced the insurer's liability for personal injury if a permissive user rather than a listed insured was driving, was insufficiently plain and clear to defeat the reasonable expectations doctrine. *Id.* The provision at issue attempted to limit coverage for permissive users to "the minimum limits of liability insurance coverage specified by the financial

9

no ambiguous terms; it is not susceptible to more than one interpretation. While Chicago Motors' reasonable expectations argument fails on this ground alone, the Court will consider each of the factors articulated in *Bidwell* in light of Chicago Motors' heavy reliance on that case.

### 1. Whether the Declarations Page Is Silent Regarding Limitation

The first factor—whether the declarations page is silent with respect to any limitation included later in the policy—weighs, at best, slightly in favor of Chicago Motors. As in *Bidwell*, the declarations pages here do not contain explicit language referencing the limitations included later in the policy. However, in *Bidwell*, the insurance agreement stated in unqualified terms that "[i]f you pay the premium when due, this policy provides the insurance coverages in the amounts shown in the Declarations." 367 S.W.3d at 590. The comparable phrase contained on the Common Policy Declarations page in Chicago Motors' policy differs significantly in that it includes a clause subjecting the agreement to "all the terms of this policy." Specifically, the phrase states that "[i]n return for the payment of the premium, *and subject to all the terms of this policy*, we agree with you to provide the insurance as stated in this policy." (D.N. 31-1, PageID # 684) (emphasis added) Notably, the phrase contains no reference to the declarations pages and in no way indicates that the comprehensive terms of the policy are summarized in those pages. Thus, while the declarations pages do not explicitly refer to any limitations contained later in the policy, they do not utilize the same unqualified terms that the court relied on to support its conclusion in *Bidwell*.

---

responsibility law applicable to the accident, regardless of the limits stated in the Declarations." *Id.* at 587. The Kentucky Supreme Court considered the above three factors when analyzing the language used on the declarations page, and in the policy in general, and found the provision to be unenforceable. *Id.*

## 2. Whether the Coinsurance Provision Uses Confusing Terminology

The second factor weighs in favor of State National because the coinsurance provision is not stated in limited or confusing terminology. In *Bidwell*, the court found that the step-down provision satisfied this prong because it was "mentioned in limited and confusing terminology as the fifth of five definitions of 'insured.'" 367 S.W.3d at 590. In particular, the court noted that the step-down provision attempted to limit coverage for permissive users to "the minimum limits of liability insurance coverage specified by the financial responsibility law applicable to the accident, regardless of the limits stated in the Declarations." *Id.* at 587. In *Bidwell*, that clause would have reduced the insured's coverage from $250,000 to $25,000, based on the Kentucky statute applicable to that accident. *Id.* at 587-88. The court stated that "[w]hat makes this provision particularly confusing is that it purports to limit coverage to some indeterminate figure, indicated by a cryptic reference to some 'financial responsibility law applicable to the accident.'" *Id.* at 590; *see also Simon*, 724 S.W.2d at 212 (interpreting an insurance contract containing limits for underinsured motorist coverage and finding that the "reference to 'underinsured' is buried in a lengthy 'definitions' section. It states that 'uninsured highway vehicle' includes an 'underinsured highway vehicle.' This sentence can best be described as an oxymoron, a combination of incongruous words, because the word 'uninsured' by any normal definition would necessarily *exclude* 'underinsured' as a contradiction in terms.").

In contrast, the language of the State National coinsurance provision is straightforward and contains no confusing, ambiguous, or oxymoronic terminology.[3] It does not rely on cryptic references to indeterminate figures or statutes. Rather, the phrase clearly outlines how the

---

[3] While concluding that the State National coinsurance language is acceptable under *Bidwell*, the Court makes no finding with respect to whether the cost of the insurance contract is economically reasonable in light of the ultimate benefits provided.

11

amount of coverage will be calculated; the limitation states that the amount of coverage will be determined by "dividing the limit by the total values you actually had when 'loss' occurred." *See supra* Part III.B.

### 3. Whether the Limitation Provision Is Insufficiently Plain to Defeat the Reasonable Expectation of Coverage Created by the Declarations Pages

In *Bidwell*, the court found that the step-down provision was not sufficiently clear so as to defeat the reasonable expectation of coverage established by the declarations page. The court pointed to three different aspects of the insurance agreement to support its conclusion. First, it noted that the insurer indicated in unqualified terms that if the policyholder pays "the premium when due, th[e] policy provides the insurance coverages *in the amounts shown in the Declarations*." *Bidwell*, 367 S.W.3d at 591 (emphasis in original). Second, the court cited the policy's index, which asserted that the declarations page provided the "types of coverage and amount of insurance you have." *Id.* The court found this to be an incomplete statement because the amount of permissive user coverage was not listed on that page. *Id.* Finally, the court noted that, based on language included in the contract, the insurer placed on affirmative duty on the policyholders to confirm that their coverages were correct by merely checking the declarations page. *Id.* at 591-92.

Unlike in *Bidwell*, the declarations pages in Chicago Motors' policy do not create a reasonable expectation that the amounts listed therein would cover physical damage to all vehicles on the dealer's lot. As outlined above, the operative phrase in bold on the first State National declarations page differs significantly from the phrase contained on the declarations page in *Bidwell*. *See supra* Part III.B.1. Specifically, the phrase at issue in this case includes a limiting clause stating that the insurance agreement is subject to "all the terms of this policy" and makes no reference to the declarations pages. Moreover, there is no evidence demonstrating that

any other sections of the agreement indicate that the declarations pages contain a comprehensive overview of the entire agreement. In contrast to *Bidwell*, there is no index suggesting that the declarations pages provide a summary of the policy terms, nor is there any statement placing an affirmative duty on the policyholder to check only the declarations pages to confirm that they contain the requisite amounts of coverage. Chicago Motors' reasonable expectations argument fails, and the limiting coinsurance provision is therefore enforceable.

## IV. CONCLUSION

For the foregoing reasons, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) State National's cross motion for summary judgment (D.N. 31) is **GRANTED**. A separate judgment will be entered this date.

(2) Chicago Motors' motion for summary judgment (D.N. 29) is **DENIED**.

(3) An additional and identical copy of Plaintiff's motion for summary judgment (D.N. 35), which appears to have been inadvertently entered into the record, is **DENIED** as moot.